UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6

**CIVIL MINUTES - GENERAL**

Case No. 8:25-cv-02483-JVS-KES Date September 22, 2026

Title Kristopher Rene Gomez v. Baller Busters et al

Present: The Honorable **James V. Selna, U.S. District Court Judge**

| Elsa Vargas | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:** **[IN CHAMBERS] Order Regarding Defendants' Motions to Dismiss [35] [36]**

Plaintiff Kristopher Rene Gomez ("Gomez") filed a Complaint on November 5, 2025. (Compl., Dkt. No. 1.) Defendants Raeesabbas Mohamed ("Mohamed") and Baller Busters each move to dismiss the Complaint. (Mot. by Mohamed ("Mohamed Mot."), Dkt. No 35; Mot. by Baller Busters ("BB Mot."), Dkt. No 36.) Gomez filed an untimely opposition. (Opp'n, Dkt. No. 37.) Each Defendant filed a reply. (Reply by Mohamed ("Mohamed Reply"), Dkt. No. 38; Reply by Baller Busters ("BB Reply"), Dkt. No. 39.)

For the following reasons, the Court **GRANTS** both motions to dismiss.

## I. BACKGROUND

### *A. Factual History*

Plaintiff Kristopher Rene Gomez is a resident of Orange County, California. (Compl. ¶ 1.) He alleges that Defendant Baller Busters is an unknown entity doing business in Arizona and operates an Instagram account under the handle @ballerbusters, which has approximately 364,000 followers. (Id. ¶ ¶ 2, 9.) Defendant Mohamed is an individual who does business in Arizona and is a licensed attorney in that state. (Id. ¶ ¶ 3, 12.)

On or about September 16, 2025, Plaintiff alleges that Baller Busters and Mohamed published a post with an associated video (the "Video") from the @ballerbusters Instagram account concerning Plaintiff, who formerly operated a business known as Ecom Partners and is known online as @krisdashark. (Id. ¶ ¶ 8, 11.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:25-cv-02483-JVS-KES | Date | September 22, 2026 |
| Title | Kristopher Rene Gomez v. Baller Busters et al | | |

According to the Complaint, the post stated that "@krisdashark pleads GUILTY to possession and access with intent to view child p*rnography." (Id. ¶ 9.) The post allegedly further stated that Plaintiff had entered into a plea agreement admitting to viewing "prepubescent child pornography," faced up to five years of imprisonment per count, and was a convicted felon. (Id. ¶ 10.) Plaintiff alleges that the statements were communicated to third parties, including followers of the @ballerbusters account. (Id. ¶ 16.) He further alleges that recipients understood the statements to concern him and that, following the publication, Plaintiff received multiple death threats and business associates and that investors threatened to sever their relationships with him. (Id.)

Plaintiff alleges that those statements actually concerned a different individual, Kristopher Lee Gomez, who is unrelated to Plaintiff and was the subject of criminal proceedings in the United States District Court for the Western District of Texas. (Id. ¶ 11.) According to the Complaint, Defendants knew, or should have known, that the statements concerned the wrong Kristopher Gomez, particularly because Defendants were familiar with Plaintiff and Ecom Partners from their previous Instagram posts and were aware of Plaintiff's full name, California domicile, and California business activities. (Id. ¶ ¶ 12–13, 15.)

According to Plaintiff, the publication damaged his reputation in California, where he resides and conducts business. (Id. ¶ ¶ 17–19.) He further alleges that the publication caused depression, humiliation, embarrassment, emotional pain and suffering, and injury to his personal and professional reputations. (Id. ¶ 23.) Plaintiff also alleges that the publication caused associates and investors to threaten to sever ties with him, and harmed his relationship with his immediate family. (Id. ¶ 39.)

Plaintiff asserts claims of defamation, slander, negligence, intentional infliction of emotional distress, and violation of California's Unfair Competition Law against Defendants. (See generally id.)

*B. Procedural History*

After filing the Complaint, Plaintiff attempted to serve both Defendants at the Scottsdale, Arizona office of R.M. Warner, PLC, Mohamed's law firm. (Dkt. Nos. 12, 13.) The process server left the documents at the office with an individual identified as "Jane Doe," who declined to accept them. (Id.) Rebekah Triphahn, the firm's Legal

Administrator, states that she was that individual and was not authorized to accept service on behalf of either Defendant. (Declaration of Rebekah Triphahn ("Triphahn Decl."), Dkt. No. 36-2 ¶ ¶ 2, 5)

On March 7, 2026, Plaintiff separately mailed the Summons, Complaint, and a "Notice and Acknowledgment of Receipt of Summons and Complaint" to Mohamed and to "Baller Busters c/o Raeesabbas Mohamed" at the same address. (Dkt. Nos. 12-1, 13-1.) Neither acknowledgment was signed or returned. (Declaration of Raeesabbas Mohamed ("Mohamed Decl."), Dkt. No. 35-1 ¶ 22; Declaration of Kaveh Newman ("Newmen Decl."), Dkt. No. 39-1 ¶ 18.) Plaintiff later sought leave to serve Defendants by publication, which the Court denied. (Dkt. Nos. 22-23.)

On June 11, 2026, the Court granted in part Plaintiff's motion for costs incurred in attempting to serve Defendants and ordered Defendants to pay $1,545 pursuant to Rule 4(d)(2). (Dkt. Nos. 24, 31.) That same day, the Clerk entered default against both Defendants. (Dkt. No. 30.) The parties subsequently stipulated to set aside the defaults, and the Court approved the stipulation on July 21, 2026. (Dkt. Nos. 33, 34.) The stipulation left unresolved the parties' disputes concerning service, personal jurisdiction, and the Plaintiff's motion for costs of service.

Defendants thereafter filed the instant motions. (Mohamed Mot.; BB Mot.) Both seek dismissal for lack of personal jurisdiction and insufficient service of process and ask the Court to vacate the Costs Order. Baller Busters additionally challenges its capacity to be sued.

## II. Legal Standard

### *A. Failure to File a Timely Opposition.*

Local Rule 7-9 provides that "[e]ach opposing party shall, not later than ten (10) days after service of the motion in the instance of a new trial motion and not later than twenty-one (21) days before the date designated for the hearing of the motion in all other instances, serve upon all other parties and file with the Clerk either (a) the evidence upon which the opposing party will rely in opposition to the motion and a brief but complete memorandum which shall contain a statement of all the reasons in opposition thereto and the points and authorities upon which the opposing party will rely, or (b) a

written statement that that party will not oppose the motion." C.D. Cal. L. R. 7–9. Local Rule 7–12 authorizes the Court to "decline to consider any memorandum or other document not filed within the deadline set by order or local rule." Id. at 7–12. Moreover, "[t]he failure to file any required document, or the failure to file it within the deadline, may be deemed consent to the granting or denial of the motion, with the exception that a motion pursuant to F.R.Civ.P. 56 may not be granted solely based on the failure to file an opposition." Id.

"If the plaintiff fails to prosecute or to comply with [the federal] rules or a court order, a defendant may move to dismiss the action or any claim against it." Fed. R. Civ. P. 41(b). Moreover, the Court has inherent power to achieve the orderly and expeditious disposition of cases by dismissing actions for failure to prosecute. Link v. Wabash R.R., 370 U.S. 626, 629–30 (1962); Ghazali v. Moran, 46 F.3d 52, 53–54 (9th Cir.), cert. denied, 516 U.S. 838 (1995). "Despite this authority, dismissal is a harsh penalty and, therefore, it should only be imposed in extreme circumstances." Ferdik v. Bonzelet, 963 F.2d 1258, 1260 (9th Cir. 1992). The Ninth Circuit has directed district courts to weigh five factors in determining whether to dismiss a claim under Rule 41: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to defendants/respondents; (4) the availability of less drastic alternatives; and (5) the public policy favoring disposition of cases on their merits." Pagtalunan v. Galaza, 291 F.3d 639, 642 (9th Cir. 2002). "The list of factors amounts to a way for a district judge to think about what to do, not a series of conditions precedent before the judge can do anything . . .." Valley Eng'rs Inc. v. Elec. Eng'g Co., 158 F.3d 1051, 1057 (9th Cir. 1998).

*B. Capacity to Be Sued.*

Capacity to sue or be sued in federal court is governed by Federal Rule of Civil Procedure 17(b). Under this Rule, an individual's capacity to be sued is determined by "the law of the individual's domicile"; a corporation's capacity to be sued is determined by "the law under which it was organized"; and the capacity of "all other parties" to be sued is determined by "the law of the state where the court is located." Fed. R. Civ. P. 17(b)(1), (2), (3); see also Southern California Darts Ass'n v. Zaffina, 762 F.3d 921, 926–27 (9th Cir. 2014). Although a party need not affirmatively plead its capacity to sue or be sued, a party wishing to challenge capacity must do so "by a specific denial, which must state any supporting facts that are peculiarly within the party's knowledge." Fed. R.

Civ. P. 9(a)(2).

Under California law, use of a fictitious or trade name does not create a legal entity distinct from the person or entity operating under that name. Providence Wash. Ins. Co. v. Valley Forge Ins. Co., 42 Cal. App. 4th 1194, 1200 (1996); Pinkerton's, Inc. v. Superior Court, 49 Cal. App. 4th 1342, 1348 (1996). Nevertheless, an existing legal entity may be sued under its fictitious business name. Pinkerton's, 49 Cal. App. 4th at 1348-49. Once the entity's true name is discovered, however, "all further proceedings should be in the corporate name." Id. at 1349.

*C. Dismissing Under Rule 12(b)(2) for Lack of Personal Jurisdiction.*

Personal jurisdiction refers to a court's power to render a valid and enforceable judgment against a particular defendant. See World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291 (1980); Pennoyer v. Neff, 95 U.S. 714, 720 (1877), overruled in part by Shaffer v. Heitner, 433 U.S. 186, 206 (1977). The contours of that power are shaped, in large part, by the Due Process Clause of the Fourteenth Amendment, which requires sufficient "contacts, ties, or relations" between the defendant and the forum state before "mak[ing] binding a judgment *in personam* against an individual or corporate defendant." Int'l Shoe Co. v. Washington, 326 U.S. 310, 319 (1945). Due Process requires that "there exist 'minimum contacts' between the defendant and the forum" in order to protect the defendant "against the burdens of litigating in a distant or inconvenient" court and lends "a degree of predictability to the legal system." World-Wide Volkswagen, 444 U.S. at 291, 292, 297; see also Calder v. Jones, 465 U.S. 783, 788 (1984) ("The Due Process Clause of the Fourteenth Amendment . . . permits personal jurisdiction over a defendant in any State with which the defendant has certain minimum contacts. . ..") (internal quotation marks and citation omitted).

Jurisdiction must also comport with law of the forum state. See Fed. R. Civ. P. 4(k)(1)(A); Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme, 433 F.3d 1199, 1205 (9th Cir. 2006) (en banc). Because California's long-arm statute allows the exercise of jurisdiction on any basis consistent with the state and federal constitutions, the jurisdictional analyses of state law and federal due process are the same. Cal. Code. Civ. Proc. § 410.10; see also Yahoo!, 433 F.3d at 1205.

Federal Rule of Civil Procedure 12(b)(2) allows a defendant to move for dismissal

based on a lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). "In opposing a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction is proper." Ranza v. Nike, Inc., 793 F.3d 1059, 1068 (9th Cir. 2015). "In the absence of an evidentiary hearing, "[h]owever, this demonstration requires that the plaintiff 'make only a prima facie showing of jurisdictional facts to withstand the motion to dismiss.'" Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1154 (9th Cir. 2006) (quoting Doe v. Unocal Corp., 248 F.3d 915, 922 (9th Cir. 2001)).

A plaintiff may not simply rest on the "bare allegations of [the] complaint." Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800 (9th Cir. 2004) (quoting Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc., 551 F.2d 784, 787 (9th Cir. 1977)). Courts "may not assume the truth of allegations in a pleading which are contradicted by affidavit." Mavrix Photo, Inc. v. Brand Techs., Inc., 647 F.3d 1218, 1223 (9th Cir. 2011). "[D]isputed allegations in the complaint that are not supported with evidence or affidavits cannot establish jurisdiction." AMA Multimedia, LLC v. Wanat, 970 F.3d 1201, 1207 (9th Cir. 2020). "But uncontroverted allegations must be taken as true, and '[c]onflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor.'" Ranza, 793 F.3d at 1068 (quoting Schwarzenegger, 374 F.3d at 800).

Personal jurisdiction may be premised on general personal jurisdiction (based on a defendant's continuous presence in a state) or specific personal jurisdiction (based on specific contacts with the state specifically related to the claims at issue).

**a. General Personal Jurisdiction**

General jurisdiction exists when a nonresident defendant's contacts "are so continuous and systematic as to render [it] essentially at home in the forum State." Daimler AG v. Bauman, 571 U.S. 117, 139 (2014) (internal quotations omitted). A nonresident defendant's "continuous activity of some sorts within a state," however, is not enough by itself to support exercise of general jurisdiction. Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 927 (2011). "Unless a defendant's contacts with a forum are so substantial, continuous, and systematic that the defendant can be deemed to be 'present' in that forum for all purposes," a forum may not exercise general jurisdiction. Yahoo!, 433 F.3d at 1205. Where general jurisdiction exists, the Court has jurisdiction over the defendant for all purposes, even in cases where the claims arise from dealings unrelated to those that establish jurisdiction. Daimler, 571 U.S. at 127.

**b. Specific Personal Jurisdiction**

Specific jurisdiction exists when the suit "aris[es] out of or relate[s] to the defendant's contacts with the forum." Daimler at 127 (citation omitted). The Ninth Circuit employs a three-part test to determine whether a court possesses specific jurisdiction over a particular defendant: (1) the defendant must have "performed some act or consummated some transaction within the forum or otherwise purposefully availed himself of the privileges of conducting activities in the forum"; (2) the claim must "arise[] out of or result[] from the defendant's forum-related activities"; and (3) the exercise of jurisdiction must be reasonable. Pebble Beach, 453 F.3d at 1155.

The plaintiff bears the burden on the first two prongs. Schwarzenegger, 374 F.3d at 802. If the plaintiff fails to satisfy either prong, "jurisdiction in the forum would deprive the defendant of due process of law." See Omeluk v. Langsten Slip & Batbyggeri A/S, 52 F.3d 267, 270 (9th Cir. 1995). "If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." Schwarzenegger, 374 F.3d at 802 (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476-78 (1985)).

The Court must consider the following seven factors in evaluating whether the exercise of jurisdiction is unreasonable:

> (1) the extent of a defendant's purposeful interjection; (2) the burden on the defendant in defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.
>
> Rio Properties, Inc. v. Rio Intern. Interlink, 284 F.3d 1007, 1021 (9th Cir. 2002).

**c. Jurisdictional Discovery**

Finally, jurisdictional discovery "may be appropriately granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." Boschetto v. Hansing, 539 F.3d 1011, 1020 (9th Cir. 2008). Such discovery is inappropriate though if it is merely a "fishing expedition." Barantsevich v. VTB Bank, 954 F. Supp. 2d 972, 996 (C.D. Cal. 2013). Ultimately, such discovery is within the district court's discretion. Wells Fargo & Co. v. Wells Fargo Express Co., 556 F.2d 406, 430 n.24 (9th Cir. 1977)

Although the Ninth Circuit has not definitively ruled on the necessary showing for plaintiffs to obtain jurisdictional discovery, Ninth Circuit district courts have consistently ordered discovery when plaintiffs established a "colorable basis" for personal jurisdiction. Martinez v. Manheim Cent. California, No. 1:10-CV-01511-SKO, 2011 WL 1466684, at *4 (E.D. Cal. Apr. 18, 2011) (collecting cases). This is "something less than a prima facie showing" that requires "the plaintiff to come forward with 'some evidence' tending to establish personal jurisdiction over the defendant." Id. (quoting Mitan v. Feeney, 497 F. Supp. 2d 1113, 1119 (C.D. Cal. 2007)).

*D. Dismissing Under Rule 12(b)(5) for Improper Service.*

Under Federal Rule of Civil Procedure 12(b)(5), a Court may dismiss a complaint for insufficient service of process. "Before a . . . court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied."

Omni Capital International, Ltd. v. Rudolf Wolff & Co., 484 U.S. 97, 104 (1987). The plaintiff bears the burden of establishing the validity of service. See Brockmeyer v. May, 383 F.3d 798, 801 (9th Cir. 2004) ("Once service is challenged, plaintiffs bear the burden of establishing that service was valid under Rule 4."). An affidavit by the process server is "prima facie" evidence of proper service. SEC v. Internet Solutions for Business, Inc., 509 F.3d 1161, 1166 (9th Cir. 2007). Such an affidavit may only be overcome "by strong and convincing evidence." Id. (citing O'Brien v. R.K. O'Brien & Associates, Inc., 998 F.2d 1394, 1398 (7th Cir. 1993)).

If a Court finds that service was improper, the Court has discretion in deciding whether to dismiss the complaint or quash service of process. S.J. v. Issaquah School District No. 411, 470 F.3d 1288, 1293 (9th Cir. 2006) (quoting Stevens v. Security Pacific National Bank, 538 F.2d 1387, 1389 (9th Cir. 1976)). If service is quashed, it is left to the Court's discretion whether to extend the deadline for service of process pursuant to Federal Rule of Civil Procedure 4(m). Id. (citing Mann v. American Airlines, 324 F.3d 1088, 1090–91 (9th Cir. 2003)). Rule 4(m) states that the Court must extend the time for service for an appropriate period if "the plaintiff shows good cause for the failure."

## III. Discussion

### *A. Plaintiff's Failure to File a Timely Opposition*

Defendants each filed their motions to dismiss on August 11, 2026. (See Dkt. Nos. 35, 36.) Pursuant to Local Rule 7-9, Plaintiff had until August 24, 2026 to file his opposition to the motions to dismiss. However, Plaintiff filed his opposition brief on August 28, 2026, making it delinquent by four days. (See Dkt. No. 37.) As aforementioned, pursuant to Local Rule 7–12, "failure to file any required paper, or the failure to file it within the deadline, may be deemed consent to the granting or denial of the motion." C.D. Cal. R. 7–12. The Court also notes that Plaintiff's opposition to the motions to dismiss did not contain a statement of facts, did not cite to any case law, and, at best, addressed only one of Defendants' substantive arguments, and only perfunctorily at that.

Although the Court could deem Plaintiff's failure to file a timely opposition as consent to the granting of Defendants' motions to dismiss, see, e.g., Dawson v. County of

Los Angeles, No. 2:10–CV–00339–JST (JCx), 2011 WL 2173656, at *4 (C.D. Cal. June 2, 2011), the Court, in its discretion, nevertheless considers each motion to dismiss on its merits.

*B. Defendant Baller Busters*

Defendant Baller Busters moves to dismiss Plaintiff's Complaint for three independent reasons: (1) first because "Baller Busters" is a trade name and Instagram username, rather than a legal entity capable of being sued, served, or the subject of a default, warranting dismissal under Federal Rules 9(a)(2) and 17(b); (2) second because, even if this Court were to construe Plaintiff's Complaint as directed at the legal entity behind Baller Busters, a Delaware LLC, this Court lacks personal jurisdiction over that entity, warranting dismissal under Federal Rule 12(b)(2); and (3) third, because Plaintiff failed to effectuate proper service of process on Defendant Baller Busters, warranting dismissal under Federal Rule 12(b)(5). (BB Mot. at 2.) The Court addresses each of these arguments in turn.

1. Capacity to be Sued

To begin, Plaintiff fails to respond to Baller Busters' argument that, because it is a trade name[1] rather than a registered legal entity, it is not capable of being sued under Rule 17(b). As Defendant Baller Busters points out, "[t]he Opposition does not mention Rule 17(b), Rule 9(a)(2), capacity, [or relevant legal precedent]" at all. (BB Reply at 6.) Plaintiff's failure to do so is particularly notable in light of this Court's prior indications that the question of whether Baller Busters has capacity to be sued would be a key threshold issue. (See Order by Magistrate Judge Early dated February 17, 2026 at 3, Dkt. No. 11 ("Leaving aside whether defendant 'Baller Busters,' which, as noted appears to be an Instagram name, has the capacity to be sued. . .."); see also Order by Magistrate Judge

---

[1] Black' s law dictionary defines "Tradename" as follows:

> A name, style, or symbol used to distinguish a company, partnership, business, or nonprofit organization (as opposed to a product or service); the name under which a firm operates. A tradename is a means of identifying a business — or its products or services — to establish goodwill. It symbolizes the business's reputation. Cf. brand; d/b/a; trademark; business name under name.
>
> Tradename, Black's Law Dictionary (12th ed. 2024).

Early dated April 13, 2026 at 3 (citing back to this open question).) A plaintiff abandons his claims by not responding to arguments raised on a motion to dismiss. See Walsh v. Nevada Dep't of Hum. Res., 471 F.3d 1033, 1037 (9th Cir. 2006) (holding a plaintiff "effectively abandoned" a claim by failing to respond to a motion to dismiss and the plaintiff could not raise the claim on appeal); see also Montgomery v. Specialized Loan Servicing, LLC, 772 F. App'x 476, 477 (9th Cir. 2019) ("The district court properly dismissed plaintiffs' remaining claims because plaintiffs failed to respond to the arguments raised in defendants' motion to dismiss these claims.") (citing Walsh, 471 F.3d at 1037). The Court may therefore treat Plaintiff's failure to respond as consent to the granting of the motion on this ground. See C.D. Cal. L.R. 7–12. Nevertheless, the Court considers the argument on its merits.

The Court agrees with Baller Busters insofar as it argues that a fictitious business or trade name does not itself constitute a legal entity separate from the person or entity operating under that name. See Fed R. Civ. P. 17(b); see also Boriso v. Alamo Rent A Car, No. C18-5847 BHS, 2019 WL 316710, at *3 (W.D. Wash. Jan. 24, 2019) (granting defendants' motion to dismiss because the non-entity trade name lacked capacity to be sued). Under California law, "[u]se of a fictitious business name does not create a separate legal entity." Pinkerton's, 49 Cal. App. 4th at 1348. Rather, "[t]he designation 'dba' or 'doing business as' simply indicates" that a person or entity operates under a fictitious business name. Providence, 42 Cal. App. 4th at 1200. Thus, "[d]oing business under another name does not create an entity distinct from the person operating the business . . . [t]he business name is a fiction, and so too is any implication that the business is a legal entity separate from its owner." Id.; see also Pinkerton's, 49 Cal. App. 4th at 1348. Moreover, the California Corporations Code identifies only a "corporation" and an "association" as entities with the capacity to be sued. Cal. Corp. Code § 105; see also Theta Chi Fraternity, Inc. v. Leland Stanford Junior University, 212 F.Supp.3d 816, at 821–22 (N.D. Cal. 2016).

That being said, this principle alone does not necessarily establish that the instant action must be dismissed merely because Plaintiff identified a defendant by its trade name. Pinkerton's expressly distinguishes between treating a fictitious business name as an independent legal entity and suing the underlying legal entity under that name. There, the court explained that although the fictitious business name at issue was "nothing more than a name" used by the corporation, "a lawsuit could properly be brought against [the corporation] by suing and serving it under its fictitious business name." 49 Cal. App. 4th

at 1348. The court further characterized the naming and service of a corporation under its fictitious business name as "an entirely acceptable procedure." Id. at 1349. What a plaintiff may not do is treat the fictitious business name and the entity operating under that name as two legally distinct defendants. Id. at 1348–50. Thus, once the legal entity's true name is discovered, "all further proceedings should be in the corporate name." Id. at 1350.

The Complaint names "BALLER BUSTERS, an unknown entity," and alleges that Baller Busters is "an unknown entity doing business in the State of Arizona" that is "known to its 364k instagram followers as @ballerbusters." (Compl. ¶ 2.) The Complaint therefore does not necessarily purport to sue an Instagram account or trade name as a juridical entity independent of its owner. Rather, fairly construed in the light most favorable to Plaintiff, the nonmovant, the complaint identifies an unknown legal entity by the name under which Plaintiff alleges that entity conducts the activity giving rise to this action. Baller Busters' own motion to dismiss contemplates this more favorable construction of Plaintiff's Complaint. (See BB Mot. at 17 (anticipating the possibility that the Court may "read[] the Complaint to name the entity behind the account.").)

The record submitted by Baller Busters confirms that such a legal entity exists. According to the Declaration of Kaveh Newman, "Baller Busters" is the trade name and Instagram handle used by a limited liability company organized under Delaware law. (Newmen Decl. ¶ ¶ 2–3.) Baller Busters argues that this distinction demonstrates that Plaintiff sued only a nonexistent trade name and never sued the Delaware entity itself. (BB Mot. at 16–17; BB Reply at 7–8.) But Pinkerton's does not support so categorical a distinction between the two. Instead, its premise is that a fictitious business name is merely another designation for the legal person or entity operating under that name, and that the underlying entity may therefore be sued under the fictitious name. See Pinkerton's, 49 Cal. App. 4th at 1348–50; Providence, 42 Cal. App. 4th at 1200.[2]

[2] The Court notes that Pinkerton's involved a corporation that had filed fictitious business name statements in California and conducted business under that name. See 49 Cal. App. 4th at 1345–46. The record here does not establish that the Delaware LLC operating under the name "Baller Busters" registered that name as a fictitious business name in California. Baller Busters, however, does not argue that this distinction renders Pinkerton's inapplicable or otherwise identify authority establishing that an entity may be sued under a trade name only where that name has been formally registered. The Court

Accordingly, although "Baller Busters" does not constitute a legal entity separate from the Delaware limited liability company that operates under that name, that fact alone does not necessarily warrant dismissal under Rule 17(b). However, whether Plaintiff has established personal jurisdiction over the underlying entity, or properly served that entity, presents separate questions, which the Court addresses below.

2. Dismissing Under Rule 12(b)(2) for Lack of Personal Jurisdiction[3]

---

therefore does not read Pinkerton's as establishing such a limitation.

[3] While not directly alleged in the Complaint, the Court independently finds that it has subject matter jurisdiction over the instant suit on the basis of diversity jurisdiction. For diversity jurisdiction to exist under 28 U.S.C. § 1332, there must be "complete diversity of citizenship," which requires that "the citizenship of each plaintiff is diverse from the citizenship of each defendant." Caterpillar, Inc. v. Lewis, 519 U.S. 61, 68 (1996). The citizenship of limited liability companies (LLCs) is determined for jurisdictional purposes by the citizenship of each of its members or owners. Johnson v. Columbia Properties Anchorage, LP, 437 F.3d 894, 899 (9th Cir.2006). A trust has the citizenship of its trustee or trustees. Id. at 900 (citing Navarro Sav. Ass'n v. Lee, 446 U.S. 458, 464 (1980)). To determine which state an individual is a citizen of for purposes of diversity jurisdiction, the Court must examine in which state the individual is "domiciled." Lew v. Moss, 797 F.2d 747, 750 (9th Cir. 1986). "[D]omicile for purposes of diversity is determined as of the time the lawsuit is filed." Id. "[A] person is 'domiciled' in a location where he or she has established a 'fixed habitation or abode in a particular place, and intends to remain there permanently or indefinitely.'" Id. at 749–50 (quoting Owens v. Huntling, 115 F.2d 160, 162 (9th Cir. 1940)). Plaintiff avers that at the time of filing this suit, he was a domiciliary of California, and that he remains domiciled in California to present. (Compl. ¶ ¶ 1, 11, 16.) While only indirectly established in the Complaint, Defendant Mohamed is a domiciliary of Arizona. (Id. ¶ ¶ 3, 12; see also Mohamed Decl. ¶ ¶ 2–3.) Pursuant to the Notice of Compliance with the Court's Order filed by Defendant Baller Busters on September 17, 2026, the Delaware LLC operating the Baller Buster's Instagram account has one sole member, Grumpy Cat Trust, whose sole trustee was, at the time this suit was filed and at all times relevant to this action, a citizen and domiciliary of the State of New York, and not of the State of California,. (Dkt. No. 48 ¶ ¶ 2, 5.) Grumpy Cat Trust is also a trust organized and administered under the laws of the State of New York; its domicile, in light of the domicile of its trustee, is New York. (Id. ¶ ¶ 8–9.) Accordingly, the Court finds that there is complete diversity. Moreover, pursuant to 28 U.S.C. § 1332(a), this Court has subject matter jurisdiction over suits in which the parties are citizens of different states, and the amount in controversy exceeds $75,000. Generally, the amount in controversy is determined from the face of the pleadings. See Pachinger v. MGM Grand Hotel-Las Vegas, Inc., 802 F.2d 362, 363 (9th Cir. 1986). The Complaint pleads that "the amount in controversy exceeds $75,000." (Compl. ¶ 4; see also id. ¶ ¶ 23, 28.)

As aforementioned, in order to properly oppose Defendant Baller Busters' motion to dismiss for lack of personal jurisdiction, Plaintiff "bears the burden of establishing that jurisdiction is proper." See Ranza, 793 F.3d at 1068; see also Scott v. Breeland, 792 F.2d 925, 927 (9th Cir. 1986) (plaintiff bears the burden to prove personal jurisdiction). The Court, therefore, looks to the factual allegations made in the Complaint in assessing whether there is personal jurisdiction over the Delaware LLC entity operating Baller Busters, consistent with the above construction of the Complaint. Baller Busters argues that even accepting the factual allegations in Plaintiff's Complaint as true, Plaintiff fails to sufficiently plead the existence of either general or specific personal jurisdiction over this unnamed, underlying entity, thereby defeating the action as to Baller Busters.[4] The Court agrees with Baller Busters; Plaintiff has not alleged sufficient facts to support the exercise of either general or specific personal jurisdiction in this case.

### a. General Personal Jurisdiction

Before this Court can exercise general personal jurisdiction over Baller Busters—and by this, the Court means the legal entity behind the trade name—it must find that its affiliations with the forum state of California are so "continuous and systematic as to render [it] essentially at home" here. See Daimler, 571 U.S. at 127, 137–39. A business entity is "essentially at home" in its state of incorporation and its principal place of business. Id. at 137.

At no point in his Complaint does Plaintiff factually aver that either the principal place of business, or the state of incorporation, of the entity behind Baller Busters is in California. Instead, Plaintiff alleges in his Complaint that "Defendant Baller Busters [] is, and at all times relevant herein was, an unknown entity doing business in the State of *Arizona*." (Compl. ¶ 2 (emphasis added).) This is problematic, for purposes of the

[4] At the time the parties filed the moving documents, neither Plaintiff nor Defendants had named the Delaware LLC behind the Baller Busters Instagram account. The Court therefore conducted the below personal jurisdiction analysis relying on the factual allegations made in the Complaint, and the representations made in the declarations submitted by Defendants. Subsequently, the Court ordered Defendant Baller Busters to publicly disclose the name of the referenced Delaware LLC behind the Baller Busters Instagram account. (Dkt. No. 49.) Defendant Baller Busters complied with the Court's Order identifying the underlying entity as Nos Populus Propopulo LLC, (Dkt. No. 50 at 2.), which the Court confirmed is a limited liability company incorporated under the laws of Delaware.

general personal jurisdiction analysis, for two reasons. First, the Newman Declaration directly disputes this averment, stating that "[t]he Company [behind Baller Busters] also does not do business in the State of Arizona" and is incorporated in Delaware. (See Newman Decl. ¶ ¶ 3, 6.) Although the court must accept uncontroverted allegations in Plaintiff's favor, see Mavrix Photo, Inc. v. Brand Techs., Inc., 647 F.3d 1218, 1223 (9th Cir. 2011) ("We may not assume the truth of allegations in a pleading which are contradicted by affidavit, but we resolve factual disputes in the plaintiff's favor.") (citations and internal quotation marks omitted), Plaintiff has not submitted a competing affidavit actually disputing that controverted point. Second, even *if* the Court accepted Plaintiff's averment as true, the entity's purported ties to Arizona would not support the exercise of general personal jurisdiction in California.

The Supreme Court in Daimler left open the possibility that even where a defendant's state of incorporation or principal place of business lay outside the forum state, general personal jurisdiction may still be appropriately exercised in an "exceptional" case where the defendant's "operations in [the] forum . . . may be so substantial and of such a nature as to render the corporation at home in that State." Daimler, 571 U.S. at 139 n.19. This is not such a case. As Baller Busters establishes in its motion, its underlying entity "maintains its principal place of business outside California, and has no California office, property, accounts, employees, or operations." (BB Mot. at 18 (citing Newmen Decl. ¶ ¶ 5–6).)

Plaintiff has failed to allege that the entity behind Baller Busters has sufficiently continuous and systematic contacts with California or the United States for this court to exercise general personal jurisdiction over it.

### b. Specific Personal Jurisdiction

As stated, the Due Process Clause of the Fourteenth Amendment to the United States Constitution permits personal jurisdiction over a defendant in any state wherein the defendant has certain "minimum contacts" such that "the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice." Calder, 465 U.S. at 788 (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)). The minimum contacts test breaks down into a three-factor inquiry in determining whether a defendant has sufficient contacts with the forum state to warrant the court's exercise of jurisdiction, roughly

summarized as: (1) whether the non-resident defendant purposefully directed his activities at the forum state or purposefully availed himself of the privileges offered by the forum state; (2) whether the plaintiff's claim arises out of or relates to these purposeful, forum-related activities; and (3) whether the exercise of jurisdiction is reasonable. See Schwarzenegger, 374 F.3d at 802. Further, while a plaintiff's own "contacts" may be "so manifold as to permit jurisdiction when it would not exist in their absence," Calder, 465 U.S. at 788, ultimately "the relationship must arise out of contacts that the 'defendant *himself*' creates with the forum State," Walden v. Fiore, 571 U.S. 277, 284 (2014) (citation omitted) (emphasis in original). The minimum contacts analysis "looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." Id. at 285. As such, "the plaintiff cannot be the only link between the defendant and the forum." Id.

The Court now examines whether Plaintiff has sufficiently pled the existence of all three factors.

*i. Factor (1): Purposeful Direction*

The Ninth Circuit has clarified that where a defendant has allegedly committed conduct that takes place *outside* the forum state and has effects *inside* the forum state, the "Calder effects" test should be applied.[5] Under that test, a defendant can be subject to personal jurisdiction based on "intentional conduct [outside the forum] calculated to cause injury to [a plaintiff] in [the forum]." Id. at 791. Specifically, that test establishes that purposeful direction exists when a defendant allegedly: "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." Schwarzenegger, 374 F.3d at 803 (quoting Dole Food Co. v. Watts, 303 F.3d 1104, 1111 (9th Cir. 2002)). Here, the Complaint alleges that Baller Busters committed some conduct, which allegedly amounted to a series of torts, presumably outside California. (See Compl. ¶ 2.)[6]

---

[5] Conversely, where an intentional tort is committed *within* the forum state, the Ninth Circuit has instructed district courts to look to Paccar, rather than apply the Calder effects test. Freestream, 905 F.3d at 606.

[6] The Complaint does not directly state where the various torts occurred. It only alleges that "Baller Busters is . . . an unknown entity doing business in the State of Arizona." (Compl. ¶ 2.) This

Moreover, the Complaint establishes that Plaintiff resides in California, and felt the effects of Defendants' allegedly tortious conduct in California. (Id. ¶ ¶ 1, 4, 8–11, 13–23, 25–28.) As such, the Calder effects test governs the present inquiry.

The first factor of the Calder effects test is readily met in this case, where Plaintiff alleges that Baller Busters, along with the other named Defendants, committed several intentional torts, namely defamation per se, slander per se, and intentional infliction of emotional distress. (See id. ¶ ¶ 7–28, 35–41.) The third factor is also met, where Plaintiff alleged in his Complaint that he did experience harm in California, and that Defendants knew such harm would likely be suffered in California. (See, e.g., id. ¶ ¶ 4, 16, 19, 23 (alleging harm Plaintiff felt in California); see also id. ¶ ¶ 11, 15 (alleging that Defendants are familiar with Plaintiff, his former business, and that he resides in California, and that Defendants have connections with previous Instagram posts including Plaintiff's correct full name, domicile, and business activity in California).)

However, this Court is not convinced that the second factor of the Calder effects test, express aiming, is met here. As Baller Buster states in its motion and supports through declarations, the intentional conduct on which Plaintiff's tortious allegations are predicated did not occur in California. (See BB Mot. at 19 (citing Mohamed Decl. ¶ 9; Newmen Decl. ¶ 9).) This does not conflict with the allegations made in the Complaint. The fact that Defendant's allegedly tortious conduct directly impacted an individual in California cannot, alone, suffice. See Walden, 571 U.S. at 285–86. The "crux" of Calder itself was that "the reputation-based 'effects' of the alleged libel connected the defendants to [the forum state of] California, not just to the plaintiff." Walden, 571 U.S. at 287 (restating Calder's holding and analysis). "The reputational injury [in Calder]," which furnished the core connection between the defendants there and the forum state, "caused by the defendants' [publication] would not have occurred but for the fact that the defendants wrote an article *for publication in California* that was read by a large number of California citizens." Id. at 287–88 (emphasis added). Moreover, in addition to causing reputational injury in California, the Calder defendants "relied on phone calls to

---

does not necessarily mean that Plaintiff intended to allege in his Complaint that the various torts that Baller Busters allegedly committed were also committed in Arizona. However, Plaintiff does not allege that Baller Busters ever formally acted or operated within California. Moreover, Baller Busters itself concedes that the Calder effects test should be applied in the instant case. (BB Mot. at 18–19.)

"California sources" for the information in their article" and "wrote the story about the plaintiff's activities in California." Id. at 287.

Like the plaintiff in Calder, Plaintiff here has alleged that he experienced the "brunt" of Defendant's injury in the forum state. (See Declaration of Kristopher Rene Gomez ("Gomez Decl."), Dkt. No. 37-1 ¶ ¶ 6, 16–18, 21.) However, unlike the defendant reporter and editor in Calder, who operated a national publication that had a newspaper specifically devoted to weekly circulation in California, the Baller Busters Instagram account has no dedicated posts, publications, or segments intended for a California audience, notwithstanding the potential that it has many followers based in California. There is also no indication from Plaintiff's Complaint that the post was circulated more heavily in California. (See also BB Mot. at 19 (citing Newmen Decl. ¶ ¶ 10–11 (representing that the video was published to a general audience with no California-specific targeting.)).) There is no indication that Defendant utilized information from California-based sources, and while the ultimate individual it allegedly targeted in its post lived in California, it posted about a criminal docket in a federal court in Texas.

As Defendant Baller Buster points out in its motion, California state precedent has also refused to find that sufficient minimum contacts exist to support specific personal jurisdiction merely by defendant's "posting defamatory statements about a person on a[n] [online] page" where, unlike in Calder, a plaintiff fails to produce evidence to show that the site of publication was "expressly aimed or intentionally targeted at California[;] that either the Facebook page or the posting had a California audience[;] that any significant number of [online viewers] who might see the posting, lived in California[;] or that the [online] page had advertisements targeting Californians." Burdick v. Superior Court, 233 Cal. App. 4th 8, 13, (2015) (cited in BB Mot. at 20). The Burdick court continued: "[M]erely posting on the Internet negative comments about the plaintiff and knowing the plaintiff is in the forum state are insufficient to create minimum contacts." Id. at 12. While a non-controlling state court precedent, Burdick is nevertheless both conceptually instructive, and has been cited by in-circuit federal courts, as well. See, e.g., Handsome Music, LLC v. Etoro USA LLC, No. LACV 20-08059-VAP (JCx), 2020 WL 8455111, at *9 (C.D. Cal. Dec. 17, 2020); Janus v. Freeman, No. CV 18-08944-CJC-AS, 2019 WL 13241623, at *3 (C.D. Cal. Jan. 18, 2019); L.A. Gem & Jewelry Design, Inc. v. Reese, No. CV 15–03035 SJO (MRWx), 2015 WL 4163336, at *5 (C.D. Cal. July 9, 2015);

Austin v. Georgetown University, No. 19-cv-05631-YGR, 2021 WL 2953231 at *5 (N.D. Cal. July 14, 2021); Williams v. Kula, No. 20-CV-1120 TWR (AHG), 2020 WL 7770915, at *4–5 (S.D. Cal. Dec. 29, 2020); Wigington v. MacMartin, No. 2:21-cv-02355-KJM-DMC, 2022 WL 3999887, at *3 (E.D. Cal. Sept. 1, 2022);

Plaintiff, in his Complaint and declaration, has alleged personal knowledge of several individuals in California who have witnessed the post about him but it is unclear whether this sample constitutes a "significant" enough fraction of the post's viewers. Moreover, as detailed above, it does not follow that the Baller Busters account, nor the particular post in question, was specifically oriented at a California audience, and did not have advertisements targeting Californians. (See BB Mot. at 20–21 (citing Newmen Decl. ¶ ¶ 7, 12.) Burdick's logic, as embraced by courts in this circuit, counsels against finding purposeful direction in such circumstances, and therefore against exercising specific personal jurisdiction writ large.

*ii. Factors (2) and (3): Arising Out of or Relating To Forum State Contacts and Reasonableness of Exercising Jurisdiction*

Finding that Plaintiff has not satisfied all three parts of the Calder effects test, and therefore has not shown that Defendant Baller Busters, meaning its underlying entity, purposefully directed its conduct at California, the Court could end its specific personal jurisdiction analysis here. See Schwarzenegger, 374 F.3d at 807 (holding that plaintiff failed to establish specific jurisdiction over defendant, and concluding analysis after finding Calder effects test not met). Where "plaintiff has failed to carry its burden on the first prong of the personal jurisdiction inquiry, the court 'need not address whether the claim arose out of or resulted from [defendant's] forum-related activities or whether an exercise of jurisdiction is reasonable per the factors outlined by the Supreme Court.'" Aguilar v. Presidential Wear, LLC, 2026 WL 917607, at *7 (C.D. Cal. Mar. 31, 2026) (quoting Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1155 (9th Cir. 2006).

Even so, the Court does not believe exercising jurisdiction over Baller Busters, or its underlying entity, would be reasonable under these circumstances, anyway. Of the seven factors, the Court recognizes that the sixth forum, the importance of the forum to the plaintiff's interest in convenient and effective relief, may weigh in favor of exercising

jurisdiction in this case. However, most of the other factors support declining to exercise jurisdiction here: the Court has already found that the purposeful interjection prong was not sufficiently met, Defendant would be burdened by being hailed into a forum state in which it lacks minimum contacts, given the lack of sufficient contact, the forum state lacks any outsized interest in adjudicating the dispute, and, as Defendant expresses in its motion, an alternate forum does exist, (see BB Mot. at 22).

Accordingly, the Court **GRANTS** Defendant Baller Busters' motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2).

### c. Request for Jurisdictional Discovery

Plaintiff, in his Reply, asks the Court to order jurisdictional discovery if it finds that Plaintiff has failed to allege sufficient jurisdictional facts at the motion to dismiss stage to support the exercise of personal jurisdiction. (Reply at 8.) The Court again notes that while Plaintiff appears to reference principles supporting the exercise of judicial discretion to grant such discovery, Plaintiff does not cite a single authority for any of his premises. Regardless of the discretion district courts retain in such circumstances, the Court declines to exercise it here to grant Plaintiff's request.

Plaintiff's request for jurisdictional discovery here merely amounts to a "fishing expedition." See Barantsevich, 954 F.Supp.2d at 996. Per the above analysis, Plaintiff has not advanced any "colorable basis" for personal jurisdiction. The Defendants' motions, reply briefs, and accompanying sworn affidavits provide the information that Plaintiff purportedly seeks, (see Opp'n at 8), or, at the very least, provide the information needed to resolve the jurisdictional analysis. If, conversely, Plaintiff had included in his own affidavit information that directly undermined the jurisdictional facts included in the analysis above, the Court would resolve any factual conflict in Plaintiff's favor, as the non-movant. However, Plaintiff has not averred any such contradictory facts. Nor would jurisdictional discovery be necessary to furnish the information Plaintiff seeks as to "the entity's true name, members, and agent." As stated above, this Court declined to dismiss the Complaint based on Plaintiff's naming Defendant-entity by its trade name, Baller Busters. While the Court does recognize the potential value of obtaining additional information regarding the "audience analytics and California viewership" of the Baller Busters Instagram page "on and around September 16, 2025," on balance, the Court finds

jurisdictional discovery inefficient and inappropriate in this case—particularly where the jurisdictional analysis above does not rest on such analytics alone, and where Plaintiff himself has not advanced any showing of diligence on his part in the ample months since filing his Complaint to research and secure his information prior to seeking court intervention.

3. Dismissing Under Rule 12(b)(5) for Improper Service

As dismissal is warranted under Rule 12(b)(2), it is not necessary for the Court to proceed to Defendant Baller Busters' alternative argument, that Plaintiff failed to effectuate proper service on Defendant, thereby warranting dismissal under Rule 12(b)(5). However, the Court exercises its discretion to address this issue now, as it is one of the few grounds that Plaintiff's Opposition briefly responds to—albeit, again, in a section devoid of any legal support or citations.

A corporation, partnership, or other unincorporated association, when served within a judicial district of the United States, may be served by "delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(h)(1)(B). Alternatively, such service can be effected "in the manner prescribed by Rule 4(e)(1) for serving an individual," meaning by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." See id. at 4(h)(1)(B), 4(e)(1). Defendant Baller Busters asserts that "[n]either route was followed" by Plaintiff in this case. The Court assesses Plaintiff's compliance with each route in turn.

**a. Compliance with Rule 4(h)(1)(B): Delivering a Copy to an Authorized Agent.**

Plaintiff filed a Proof of Service form ("POS") on March 11, 2026, after multiple orders concerning Plaintiff's service obligations issued by Magistrate Judge Early, (see Dkt. Nos. 7, 11, 14)[7], purporting to document Plaintiff's service on "Baller Busters, an

[7] The Court's minute order dated January 13, 2026 warned Plaintiff that proper service was required by February 3, 2026, after noting that over 65 days had passed since Plaintiff filed his

unknown entity," on March 2, 2026. (See Proof of Service on Baller Busters, an unknown entity ("BB POS"), Dkt. No. 13.) The POS did not check the box indicating that the Complaint and Summons were left with an individual "who is designated by law to accept service of process on behalf" of Defendant; instead, the form left checked the box "Other" and specified that the forms were left with "Jane Doe", who is identified on the POS as "Legal Assistant to Raeesabbas Mohamed at Raeesabbas Mohamed's place of business." (Id.) Thereafter, Plaintiff made another attempt at service by, via a process server, "mail[ing] a copy of the Summons, Complaint, Civil Cover Sheet, Notice and Acknowledgment of Receipt of Summons and Complaint to Baller Busters c/o Raeesabbas Mohamed to 8283 N Hayden Road, Suite 229, Scottsdale, Arizona 85258" on March 7, 2026. (Declaration of Mailing Form ("Mailing Decl.") dated March 7, 2026, Dkt. No. 13-1.)

The Court agrees with Defendant Baller Busters that this attempt at service fails to comply with Rule 4(h)(1)(B)'s outlined method of acceptable service. Nothing in Plaintiff's Proof of Service indicates that "Jane Doe" was an officer, managing or general agent, or other agent authorized by appointment or law to receive service on behalf of the entity operating as Baller Busters. To the contrary, the POS identifies her only as a "[l]egal [a]ssistant to Raeesabbas Mohamed" at Mohamed's place of business. (BB POS.) The process server's accompanying narrative further reflects that the recipient expressly refused to accept service and discarded the papers into the hallway. (Id.) Defendant Baller Busters also submitted unrebutted declarations establishing that the recipient was the legal administrator of R.M. Warner, PLC, and was neither an officer,

---

Complaint, and that proof of service reflecting proper service on at least one of the Defendants was not yet filed. (Dkt. No. 7 at 2.) The Court's subsequent minute order dated February 17, 2026 then granted Plaintiff a 45-day extension to March 20. Therein, the Court noted the two declarations Plaintiff filed as to "Non-Service," but found that "despite the Court's prior two reminders, in the Advisement and in the Order, the Declarations of "Non-Service" do not reflect any effort to serve the Notice of Assignment." (Dkt. No. 11 at 2.) The Court, once again, "reminded [Plaintiff] of his obligation, under the Advisement, the Order, and Local Rule 73-2.1 to serve the Notice of Assignment (Dkt. 2) with the Summons and Complaint." (Id.) The Court issued yet another order on March 11, 2026 addressing the proofs filed by Plaintiff that same day and expressly declined to find them sufficient under Rule 4. (Dkt. No. 14 at 3−4.) The Court again reiterated that "[t]his case was filed more than four months ago" and after multiple advisements, Plaintiff has failed to effectuate proper service. (Id. at 3.) Therefore, Judge Early ordered Plaintiff to show cause why sanctions should not be imposed, including dismissal. (Id. at 3−4.)

manager, employee, nor authorized agent of the entity operating as Baller Busters. (Triphahn Decl. ¶ ¶ 2, 5; see also Newmen Decl. ¶ 14.)

Nor does Plaintiff's Opposition meaningfully engage with Defendant's argument, or provide sound rationale as to how service complied with Rule 4(h)(1)(B). Plaintiff argues only that process servers appeared at Mohamed's place of business, left the Summons and Complaint with Mohamed's legal assistant, and thereby provided Mohamed with actual notice of this action. (Opp'n at 7.) But Plaintiff does not explain how Mohamed's legal assistant was authorized to accept service on behalf of the entity operating as Baller Busters, nor does Plaintiff cite Rule 4(h) at all. And even so, actual notice does not substitute for substantial compliance with Rule 4. See Benny v. Pipes, 799 F.2d 489, 492 (9th Cir. 1986) ("[N]either actual notice nor simply naming the defendant in the complaint will provide personal jurisdiction without substantial compliance with Rule 4.") (citing Jackson v. Hayakawa, 682 F.2d 1344, 1347 (9th Cir. 1982)).

Therefore, Plaintiff has not carried his burden of establishing valid service under Rule 4(h)(1)(B). See Brockmeyer, 383 F.3d at 801.

**b. Compliance with Rule 4(h)(1)(A): Following State Law for Service**

The service laws of Arizona, where the attempted service was effectuated, and of California, where this Court sits, govern this next inquiry. Much like Federal Rule 4, Arizona Rule of Civil Procedure 4.1(i), provides that "a domestic or foreign corporation, partnership, or other unincorporated association [that] has the legal capacity to be sued and [that] has not waived service . . . may be served by delivering a copy of the summons and the pleading being served to a partner, an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process." Ariz. R. Civ. P. 4.1(i).

California Rules of Civil Procedure permit service on a corporation by delivering a copy of the summons and complaint to the person designated as agent for service of process or to certain specified officers and managers of the entity. See Cal. Civ. Proc. Code § 416.10(a)–(b). California law further clarifies that a party can authorize a person

or agent "not otherwise specified in this article" to receive service of process. See id. § 416.90. "If process is delivered to an agent of defendant, such agent must be one who is authorized by law or by appointment to receive service of process, and the agent of an individual for other purposes is not necessarily authorized to receive such process." Judicial Council's Comment to § 416.90. While "[a] specific appointment is not required, [] the principal-agent relationship must be close and enduring enough to *make it highly probable* that the defendant will receive actual notice." Warner Bros. Records, Inc. v. Golden West Music Sales, 36 Cal.App.3d 1012, 1017 (Cal. Ct. App. Jan. 28, 1974) (citing Report of the Judicial Council's Special Committee on Jurisdiction, 35–36 (Nov. 2, 1968) (emphasis added). Simply being an attorney for the party, for instance, does not necessarily make that attorney the party's authorized agent for service of process. In re Focus Media Inc., 387 F.3d 1077, 1082 (9th Cir. 2004) (citing United States v. Ziegler Bolt & Parts Co., 111 F.3d 878 (Fed. Cir. 1997).

Finally, California Code § 415.30 allows a plaintiff to serve a summons and complaint on the defendant by first-class mail if it is accompanied by two copies of the "notice and acknowledgment of receipt" form and a return postage-paid envelope. Cal. Civ. Proc. Code § 415.30(a). The service will be officially deemed complete on the date the acknowledgment of receipt is signed by the defendant. Id. at § 415.30(c). The Ninth Circuit, in interpreting Federal Rule 4(c)(2)(C)(ii), which is identical to § 415.30(c), has held that "[u]nder this provision, even if the defendant receives actual notice by mail, service is ineffective unless the defendant timely returns the acknowledgment form or the plaintiff attempts follow-up service by some other method." Mason v. Genisco Technology Corp., 960 F.2d 849, 851–52 (9th Cir. 1992) (citing Worrell v. B.F. Goodrich Co., 845 F.2d 840, 841 (9th Cir.1988)).

For the reasons stated above, see supra III.B.1, the Court disagrees with Defendant Baller Busters' threshold argument that *any* attempt to serve Baller Busters would inherently fail to satisfy the procedural mandates of Rule 4; while Defendant is correct that a trade name alone is not a separate legal entity with capacity to sue or be sued, the Court has already resolved this by recognizing Plaintiff's intention in his Complaint to focus his suit on the legal entity behind the Instagram account. Nevertheless, Plaintiff's attempted service independently fails to comply with Rule 4(h)(1)(A).

First, the March 2 office attempt does not satisfy Arizona Rule 4.1(i) for substantially the same reason it fails under Rule 4(h)(1)(B): Plaintiff delivered process to Mohamed's legal assistant, rather than to a partner, officer, managing or general agent, or other agent authorized to receive service for the entity behind Baller Busters. Nor does the attempt satisfy California law. The record contains no evidence that the legal assistant was designated or otherwise authorized to receive service on behalf of the entity operating as Baller Busters. Indeed, as mentioned, Defendant's unrebutted evidence establishes the opposite. And to the extent Plaintiff might rely upon California's substituted-service provision, the papers were left at the office of R.M. Warner, PLC, the law firm associated with co-Defendant Mohamed, not at an office of the entity operating as Baller Busters. See Cal. Civ. Proc. Code § 415.20(a).

Second, the March 7 mailing did not complete service under California Code of Civil Procedure § 415.30. Plaintiff's own Declaration of Mailing states that the process server mailed the Summons and Complaint, together with a Notice and Acknowledgment of Receipt, to "Baller Busters c/o Raeesabbas Mohamed" at the R.M. Warner office. (Mailing Decl.) But the record contains no signed acknowledgment of receipt, and Defendant Baller Busters submits unrebutted evidence that no acknowledgment was ever signed or returned. (See Newmen Decl. ¶ 18; Mohamed Decl. ¶ 22.) Accordingly, the mailing never became effective service under § 415.30. See Mason, 960 F.2d at 851–52. Nor does Plaintiff establish that Mohamed himself was an officer, managing or general agent, or agent authorized to receive service for the entity; Defendant Baller Buster's evidence states that he was former counsel and had no such authority. (Newmen Decl. ¶ 17; Mohamed Decl. ¶ 21.)

Accordingly, the Court finds that Plaintiff has failed to properly serve Defendant Baller Busters, or the legal entity behind the trade name, therefore furnishing an additional, independent reason for dismissing the instant suit against Defendant Baller Busters.

### c. Request for Leave to Re-Attempt Service

Plaintiff in his Opposition frames any defects in his attempted service as "curable" and urges that any technical failures do not warrant dismissal. (Opp'n at 7–8.) As such,

he asks the Court for "grant an extension of the service period and leave to re-serve" so that it can "serve Delaware entity through its registered agent." (Id. at 7.)

When a plaintiff has failed to properly serve defendants within the prescribed time period, the Court must decide whether to grant an extension for service or dismiss the action. See In re Sheehan, 253 F.3d 507, 513 (9th Cir. 2001) (stating that courts have broad discretion to extend time or dismiss under FRCP 4(m)). In making this determination, courts look to whether a plaintiff has provided "good cause" for the failure to effect service. See Fed. R. Civ. P. 4(m); Fimbres v. United States, 833 F.2d 138, 139 (9th Cir. 1987). At a minimum, "good cause" means excusable neglect. Boudette v. Barnette, 923 F.2d 754, 756 (9th Cir. 1991). A court may also look at whether "(a) the party that had to be served personally received actual notice, (b) the defendant would suffer no prejudice from the defect in service, (c) there is a justifiable excuse for a failure to serve properly, and (d) the plaintiff would be severely prejudiced if his complaint were dismissed." Borzeka v. Heckler, 739 F.2d 444 (9th Cir. 1984).

Here, the Court does not find that Plaintiff has shown excusable neglect for its failure to complete proper service within the required period pursuant to Rule 4(m). To begin, having found that personal jurisdiction does not exist over Defendant Baller Busters or the Delaware LLC behind it, granting such an extension would serve no purpose. Regardless, Plaintiff's record of procedural deficiency, despite multiple warnings and service-of-process-related orders issued by Magistrate Judge Early, would not otherwise suggest that Plaintiff is entitled to such relief. Plaintiff filed this action on November 5, 2025. After Plaintiff failed to effect timely service, Magistrate Judge Early expressly extended the service deadline by forty-five days, until March 20, 2026. (Dkt. No. 11 at 3.) When Plaintiff thereafter filed the March 11 Proofs, the Court declined to find them sufficient under Rule 4 and separately found that Plaintiff had failed to comply with repeated orders concerning service of the Notice of Assignment. (Dkt. No. 14 at 3–4.) By April 13, Magistrate Judge Early found that Plaintiff had been ordered repeatedly to comply with his service obligations, rejected as "not credible" Plaintiff's counsel's explanation that she had overlooked one such requirement, and observed that Plaintiff had demonstrated only a single additional attempt at service. (Order dated April 13, 2026, Dkt. No. 18 at 4–5.) The following day, the Court denied Plaintiff's request for still more time, expressly finding that Plaintiff had failed to show good cause and that his

attempts at service did "not represent a reasonable number of attempts." (Order dated April 14, 2026, Dkt. No. 23 at 1.)

Plaintiff's Opposition identifies no new circumstance justifying another extension. Beyond characterizing the defects as "curable," Plaintiff does not explain why he could not have identified and served the proper agent during the more than nine months between filing the Complaint and the present motion practice, particularly after already receiving an extension of the Rule 4(m) deadline. (See Opp'n at 7.) Nor does Plaintiff otherwise identify a justifiable excuse for failing to effect valid service. The Court therefore finds that Plaintiff has not established good cause warranting a mandatory extension under Rule 4(m), and, under the circumstances presented here, declines to exercise its discretion to grant a further extension.

*C. Defendant Raeesabbas Mohamed*

Defendant Mohamed moves to dismiss Plaintiff's Complaint for two independent reasons: (1) first because this Court lacks personal jurisdiction over Mohamed, warranting dismissal under Rule 12(b)(2); and (2) second, because Plaintiff failed to effectuate proper service of process on Mohamed, warranting dismissal under Rule 12(b)(5). (Mohamed Mot. at 1–2.) The Court addresses each of these arguments in turn.

1. Dismissing Under Rule 12(b)(2) for Lack of Personal Jurisdiction

Once again, Plaintiff "bears the burden of establishing that jurisdiction is proper" over Defendant Mohamed. See Ranza, 793 F.3d at 1068; see also Scott v. Breeland, 792 F.2d 925, 927 (9th Cir. 1986). Mohamed argues that even accepting the factual allegations in Plaintiff's Complaint as true, Plaintiff fails to sufficiently plead the existence of either general or specific personal jurisdiction over Mohamed, thereby defeating the action as to Mohamed.

Any assertion that this Court possesses general personal jurisdiction over Defendant Mohamed can be readily dispensed with. "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." Daimler, 571 U.S. at 137 (quotation omitted). The Complaint never alleges that Mohamed is domiciled in California. Indeed, the Complaint's only reference to Mohamed's location or potential

residence places him in Arizona. (See Compl. ¶ ¶ 3, 12.) Defendant Mohamed's motion further establishes that he is "at home in Arizona, not California" as "[h]e has no California residence, property, accounts, employees, or operations." (Mohamed Mot. at 11–12 (citing Mohamed Decl. ¶ ¶ 3–8.).)

The Court therefore focuses the remainder of this section on assessing whether specific personal jurisdiction exists over Defendant Mohamed.

**a. Specific Personal Jurisdiction**

The Court again restates the three factors guiding the minimum contacts test: (1) whether the non-resident defendant purposefully directed his activities at the forum state or purposefully availed himself of the privileges offered by the forum state; (2) whether the plaintiff's claim arises out of or relates to these purposeful, forum-related activities; and (3) whether the exercise of jurisdiction is reasonable. See Schwarzenegger, 374 F.3d at 802.

*i. Factor (1): Purposeful Direction*

As shown above, the Calder effects test applies in the instant case, where Mohamed allegedly took some tortious action outside California, which purportedly engendered harmful effects inside California. Once again, that test establishes that purposeful direction exists when a defendant allegedly: "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." Schwarzenegger, 374 F.3d at 803 (quoting Dole Food Co. v. Watts, 303 F.3d 1104, 1111 (9th Cir. 2002)).

This Court has already discussed that factors one and three of this test are likely satisfied in this case. See supra III.B.2.b.i. But once again, as for factor two of the Calder effects test, the Court finds that Plaintiff has not established that Mohamed expressly aimed his conduct at California. Mohamed admits that he filmed the Video, but avers that he did so in Phoneix, Arizona. (Mohamed Decl. ¶ 9.) He further states that he did not publish the Video to the Baller Busters Instagram account has never owned, operated, or controlled that account, and had no posting access to it. (Id.) Rather, after

the entity operating Baller Busters published the Video, and it invited Mohamed to appear as a "collaborator," which Mohamed accepted from Arizona. (Id. ¶ ¶ 9, 18.)

Significantly, Plaintiff does not meaningfully dispute this division of conduct. His Opposition acknowledges that "Mohamed filmed [the Video], and the entity published it to its audience." (Opp'n at 6.) Plaintiff instead argues that Mohamed's lack of access to the audience data of the Baller Busters account renders him unable to speak to what the account's operator knew about its California audience. (Id. at 5–6.) But that argument conflates the jurisdictional contacts of the two Defendants. Personal jurisdiction must be assessed individually as to each defendant. See Calder, 465 U.S. at 790 (citation omitted). Thus, whatever the Baller Busters account operator knew about its audience or did in publishing the Video cannot, without more, establish that Mohamed himself expressly aimed his conduct at California. Indeed, Plaintiff's own Opposition attributes publication to the entity behind Baller Busters rather than Mohamed.

Plaintiff principally responds that Mohamed knew—or, at minimum, may have known—that Plaintiff resided and conducted business in California. Plaintiff points to allegations that Defendants were familiar with Plaintiff and his former business from previous litigation and emphasizes Mohamed's declaration that he "did not know with certainty" where Plaintiff resided. (Opp'n at 4–5; Mohamed Decl. ¶ 15.) According to Plaintiff, Mohamed's qualification that he lacked knowledge "with certainty" itself creates a factual dispute regarding Mohamed's knowledge of Plaintiff's California residence. (Opp'n at 5.) But even resolving that inference in Plaintiff's favor, that fact does not establish express aiming. The minimum-contacts inquiry "looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there," and "the plaintiff cannot be the only link between the defendant and the forum." Walden, 571 U.S. at 285, 291; see also Axiom Foods, 874 F.3d at 1069–70 ("[I]ndividualized targeting may remain relevant to the minimum contacts inquiry, it will not, on its own, support the exercise of specific jurisdiction" absent a defendant-focused connection to the forum.) In Calder, California was not merely where the plaintiff happened to reside and experience injury; it was "the focal point both of the story and of the harm suffered." 465 U.S. at 789. There, the defendants relied on California sources in preparing the article, wrote about the plaintiff's activities in California, and published through a newspaper whose largest circulation was in California. Id. at 788–90. But the facts that made California the focal point in Calder are materially different in the instant

case. Here, Mohamed filmed the Video in Arizona; the Video concerned a criminal docket in federal court in Texas; it contained no reference to California; and Mohamed avers that he neither geographically targeted the Video toward California nor possessed information regarding the geographic distribution of the Baller Busters audience. (Mohamed Decl. ¶ ¶ 9, 11–12, 14, 16.) And even if Mohamed's acceptance of the "collaborator" designation was deemed material, accepted that invitation in Arizona, and nothing in the record indicates that doing so selected California as an audience, employed California-specific tags or geolocation, or otherwise directed the Video toward California rather than the account's general audience. (Id. ¶ ¶ 9, 11–12, 18.)

On the present record, Mohamed's own conduct does not create the requisite connection with California. Accordingly, Plaintiff has not carried his burden of establishing that Mohamed purposefully directed his activities toward California.

*ii. Factors (2) and (3): Arising Out of or Relating To Forum State Contacts and Reasonableness of Exercising Jurisdiction*

Having found that Plaintiff has failed to establish purposeful direction, the Court need not proceed further in the specific-jurisdiction inquiry. See Axiom Foods, 874 F.3d at 1068; Schwarzenegger, 374 F.3d at 802. Plaintiff bears the burden of satisfying both the purposeful-direction and arising-out-of and reasonableness prongs, and failure on any of them defeats specific jurisdiction.

In any event, the record does not identify a California contact by Mohamed from which Plaintiff's claims could arise. The conduct giving rise to the claims that is attributable to Mohamed-filming the Video and later accepting the collaborator invitation-occurred in Arizona. (Mohamed Decl. ¶ ¶ 9, 18.) Plaintiff's alleged injury in California does not itself transform that out-of-state conduct into a California contact. See Walden, 571 U.S. at 290 ("[M]ere injury to a forum resident is not a sufficient connection to the forum."). Accordingly, Plaintiff has likewise failed to demonstrate that his claims arise out of or relate to any forum-related activity by Mohamed.

Moreover, even if Plaintiff had satisfied the first two prongs, the reasonableness factors would weigh against exercising jurisdiction on this record. Mohamed is an

Arizona resident and domiciliary with no residence, office, property, accounts, employees, or operations in California. (Mohamed Decl. ¶ ¶ 2–8.) His purposeful interjection into California is, for the reasons stated above, minimal at most, and requiring him to defend this action in California would impose some burden. Arizona also provides an available alternative forum, and Plaintiff's own Complaint alleges that Mohamed does business there. (Compl. ¶ 3.) The Court recognizes that California possesses an interest in providing a forum for a California resident who alleges reputational injury suffered here, and that California is plainly more convenient for Plaintiff. On balance, however, those considerations do not overcome Mohamed’s absence of meaningful suit-related contacts with this forum.

Accordingly, the Court **GRANTS** Mohamed’s motion to dismiss under Rule 12(b)(2).

**c. Request for Jurisdictional Discovery**

Plaintiff alternatively requests jurisdictional discovery and an evidentiary hearing. (Opp’n at 8–9.) The Court declines to order jurisdictional discovery as to Mohamed. As explained above, jurisdictional discovery may be appropriate where pertinent jurisdictional facts are controverted or a more satisfactory factual showing is necessary, but it is not warranted where the request amounts to a fishing expedition. See Boschetto, 539 F.3d at 1020; Barantsevich, 954 F. Supp.2d at 996. Plaintiff must come forward with at least some evidence tending to establish a colorable basis for jurisdiction. See Martinez, 2011 WL 1466684, at *4. Plaintiff has not made that showing as to Mohamed. Several categories of Plaintiff’s proposed discovery concern the entity operating Baller Busters rather than Mohamed individually, including who owned or controlled the account, the account’s audience analytics and California viewership, and the entity’s identity, membership, and principal place of business. (See Opp’n at 8–9.) Those facts do not establish Mohamed’s own contacts with California, which must be assessed individually.

The remaining proposed discovery would not alter the Court’s jurisdictional conclusion even if it produced the facts Plaintiff anticipates. Plaintiff principally seeks to explore what Mohamed knew about Plaintiff’s identity and California connections and the parties’ prior dealings. (See Opp’n at 8–9.) But the Court has already assumed, for

purposes of the present motion, that Mohamed knew Plaintiff resided and conducted business in California. And it has already explained that such knowledge or individualized targeting, standing alone, does not establish that Mohamed expressly aimed his own conduct at California. Nor is an evidentiary hearing necessary to resolve what Plaintiff frames as a "disputed jurisdictional fact"—whether Mohamed knew "with certainty" where Plaintiff resided—because the Court assumed the disputed point in Plaintiff's favor and nevertheless concluded that purposeful direction is absent.

The Court therefore **DENIES** Plaintiff's request for jurisdictional discovery and an evidentiary hearing.

2. Dismissing Under Rule 12(b)(5) for Improper Service

Once again, the Court notes that, having found dismissal of Plaintiff's Complaint against Mohamed appropriate pursuant to Rule 12(b)(2), it need not proceed to Defendant Mohamed's alternative argument, that Plaintiff also failed to effectuate proper service as to Mohamed, thereby warranting dismissal under Rule 12(b)(5). However, for the reasons noted above, the Court evaluates this alternative argument, as well, now.

An individual may be served within a judicial district of the United States by (1) delivering a copy of the summons and of the complaint to the individual personally; (2) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; (3) delivering a copy of each to an agent authorized by appointment or by law to receive service of process; or (4) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made. Fed. R. Civ. P. 4(e)(1)–(2). It is undisputed that Plaintiff did not attempt either of the first two methods listed. However, Plaintiff impliedly invokes the latter two service options by asserting that service on Mohamed's "assistant" and/or the attempted mailing of the notice and acknowledgment form complied with the service of process requirements. (See Opp'n at 7–8.) Defendant Mohamed maintains that neither of the two ways Plaintiff attempted service "effected valid service on Mohamed." (Mohamed Mot. at 17.) This Court outlines its agreement with Mohamed as to each of the remaining routes for service of process below.

**a. Compliance with Rule 4(e)(2)(C): Delivering a Copy to an Authorized Agent.**

The Court's analysis as to Plaintiff's failure to comply with Rule 4(e)(2)(C) largely tracks its analysis of Plaintiff's similar failure to comply with Rule 4(h)(1)(B) above. See supra III.B.3.a. Plaintiff's POS did not check the box indicating that the Complaint and Summons were left with an individual "who is designated by law to accept service of process on behalf" of Defendant Mohamed. (See BB POS.) Nor does the POS indicate that "Jane Doe," the individual that Plaintiff's process server alternatively left the Summons and Complaint with, indicate that "Jane Doe" was an officer, managing or general agent, or other agent authorized by appointment or law to receive service on behalf of Mohamed. While the POS identifies her as a "[l]egal [a]ssistant to Raeesabbas Mohamed," there is nothing inherent in here mere employment by Defendant that endows her with authorization to accept service on his behalf. "[A]n actual appointment for the specific purpose of receiving purpose normally is expected" and "the mere fact that a person acts as the defendant's agent for some purposes does not necessarily mean that the person has authority to receive the summons and complaint." Sanchez v. Scrubs, No. CV 17-5599-GW(JEMx), 2017 WL 10605264, at *2 (C.D. Cal. Dec. 5, 2017) (quoting Wright & Miller, Federal Practice and Procedure § 1097); see also Watkins v. County of Los Angeles California, No. CV 22-02167 WLH (RAO), 2023 WL 8896247, at *1 (C.D. Cal. Aug. 1, 2023) (finding Plaintiffs did not effectuate proper service pursuant to Rule 4 by merely attempting delivery on one of defendant's office assistants, who was not authorized to accept service and informed the process server that she was not authorized to accept service).

Plaintiff's Opposition again rests on the assertions that the Court should accept his attempted service on account of the fact that "Mohamed had actual notice" or, in the alternative, that the Court should not dismiss Plaintiff's case on the merits due to a "curable defect." (Opp'n at 7.) First, actual notice is not a substitute for service of process "without substantial compliance with Rule 4." S.E.C. v. Ross, 504 F.3d 1130, 1140 (9th Cir. 2007); Mason v. Genisco Tech. Corp., 960 F.2d 849, 853–54 (9th Cir. 1992) (failed attempt at service under Federal Rules is not effective service even if defendant received actual notice of the action). Moreover, setting aside whether this defect is merely a technical and curable one, granting Plaintiff yet another attempt to

ameliorate it would not rectify the absence of personal jurisdiction over Mohamed—reason enough for a "merits dismissal."

Therefore, Plaintiff has not carried his burden of establishing valid service under Rule 4(e)(2). See Brockmeyer, 383 F.3d at 801.

**b. Compliance with Rule 4(e)(1): Following State Law for Service.**

For nearly identical reasons, Plaintiff has not complied with the alternative routes allowed by Rule 4(e)(1), permitting Plaintiff to serve Mohamed pursuant to either Arizona or California law.

Both Arizona law and California law closely track Federal Rule 4(e)(2) by authorizing service of an individual through personal service, abode service, or service on an authorized agent. See Ariz. R. Civ. P. 4.1(d); Cal. Civ. Proc. Code §§ 415.10, 416.10, 416.90; see also Fed. Ins. Co. v. Caldera Med., Inc., No. 2:15-CV-00393-SVW-PJW, 2015 WL 12655601, at *2 (C.D. Cal. Apr. 8, 2015) (equating requirements of Rule 4(e)(2)(C) and § 416.90). Therefore, Plaintiff's service attempts fall short for the same reasons outlined above.

Nor has Plaintiff shown compliance with California's law on substitute service. Section 415.20(b) states that, under certain circumstances, process may be left at, inter alia, a person's "usual place of business . . . in the presence of . . . a person apparently in charge of his or her office" or "place of business." Cal. Civ. Proc. Code § 415.20(b). Litigants may not, however, turn to § 415.20(b) unless the documents "cannot with reasonable diligence be personally delivered." Id. Typically, "two or three attempts to personally serve defendant" are required to establish "reasonable diligence." Block v. Cal.-Fresno Inv. Co., No. 1:22-CV-01419-JLT-SAB, 2023 WL 3062112, at *10 (E.D. Cal. Apr. 24, 2023) (citation omitted), report and recommendation adopted, 2023 WL 3582344 (E.D. Cal. May 22, 2023). There is no evidence here of any such attempts before the Summons and Complaint were left at Mohamed's office. Further, substitute service is only deemed complete *after* a plaintiff "mail[s] a copy of" the documents "by first-class mail, postage prepaid to the person to be served at the place where a copy of the summons and complaint were left." Cal. Civ. Proc. Code § 415.20(b). The March 7

mailing, which did not predate the March 3 attempted service at Mohamed's place of business, and which the Court has already deemed insufficient to meet the demands of California Code of Civil Procedure § 415.30, is also insufficient to rectify service failures.

Accordingly, the Court finds that Plaintiff has failed to properly serve Defendant Mohamed, therefore furnishing an additional, independent reason for dismissing the instant suit against Defendant Mohamed. For the reasons already outlined above, the Court also declines to exercise its discretion to grant Plaintiff a further extension to cure defective service on Mohamed. See supra III.B.3.c.

*D. Vacating the Court's Order Regarding Plaintiff's Motion for Costs of Service as to Both Defendants*

Finally, both Defendants Baller Busters and Mohamed ask this Court to vacate the Court's prior Order Regarding Plaintiff's Motion for Costs of Service as to each Defendant. (See Dkt. 31 ("Costs Order").) The referenced Order recounted Plaintiff's counsel's representation that Plaintiff had "attempted to secure a waiver of service" and that neither Defendant had returned it. (Id. at 1.) Rule 4(d)(2) permits shifting service expenses only when a defendant, without good cause, fails to sign and return a proper waiver request made under Rule 4(d)(1). Fed. R. Civ. P. 4(d)(2). As such, the Court relied on Plaintiff's sworn representations and awarded the relevant costs. Critically, neither Defendant had appeared at that point, leaving this Court with no adversarial submission as to the form and manner of this attempt to secure a waiver under Rule 4(d).

"The general rule regarding the power of a district court to rescind an interlocutory order is as follows: As long as a district court has jurisdiction over the case, then it possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient." City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper, 254 F.3d 882, 885 (9th Cir. 2001) (internal quotation marks and citations omitted). This principle follows both from the inherent powers courts have to modify their interlocutory orders before entering a final judgment, and from the Federal Rules of Civil Procedure that explicitly grant courts the authority to modify their interlocutory orders. Balla v. Idaho State Bd. of Corrections, 869 F.2d 461, 465 (9th Cir. 1989) (citing Marconi Wireless Telegraph Co. v. United States, 320 U.S. 1,

47–48 (1943); John Simmons Co. v. Grier Brothers Co., 258 U.S. 82, 88 (1922); and Fed. R. Civ. P. 54(b)). It would be appropriate to view the Costs Order in question as such an interlocutory order. See Hunt v. Check Recovery Systems, Inc., No. C05-04993 MJJ, 2008 WL 754991, at *2 (N.D. Cal. Mar. 21, 2008) (noting that plaintiffs correctly frame the order regarding payment of notice costs as an interlocutory order); Hillery v. Rushen, 702 F.2d 848, 848–49 (9th Cir. 1983) ("An interim award of attorneys' fees is not a collateral order appealable under 28 U.S.C. § 1291."); Johnny Pflocks, Inc. v. Firestone Tire & Rubber Co., 634 F.2d 1215, 1216 (9th Cir. 1980) ("Discovery orders and sanctions in the nature of civil penalties are normally deemed interlocutory[.]"). As such, this Court retains jurisdiction to consider Defendants' requests that it revisit its prior Costs Order.

Defendants' arguments, which are functionally identical, consist of two layers. First, they contend that the Costs Order should fail derivatively if the Court agrees that personal jurisdiction was lacking, or that service was defective. (BB Mot. at 26–27; Mohamed Mot. at 20–21.). Second, they argue that there was never a valid Rule 4(d)(1) request to refuse, so Rule 4(d)(2)'s cost-shifting obligation never arose. Plaintiff argues that Defendants effectively "brought that [costs] order on themselves" by failing to properly waive service after Plaintiff sent the notice and acknowledgment form. " (Opp'n at 2–3.) Because neither Defendant returned the acknowledgment, Plaintiff argues that he was forced to incur additional service expenses and that the Costs Order should therefore remain in place. (Id.) However, Defendants contend that even had Plaintiff properly complied with California Code of Civil Procedure § 415.30, sending a notice and acknowledgment form is not the same as sending a waiver pursuant to Rule 4(d)(1), the latter of which Plaintiff never sent. (BB Mot. at 27–28; Mohamed Mot. at 21–22.). Moreover, Rule 4(d)(1) requires a waiver request directed to an entity to be addressed to an officer, managing or general agent, or other authorized agent. Fed. R. Civ. P. 4(d)(1)(A)(ii). Therefore, Defendant Baller Busters further argues that because Plaintiff addressed the mailing to "Baller Busters c/o Raeesabbas Mohamed," and Mohamed was not an officer, managing agent, or authorized service agent for the entity, the Rule 4(d) waiver was left unmet for an additional reason. (BB Mot. at 27–28.)

Plaintiff does not respond to Defendants' central contention that the Costs Order awarded costs under Federal Rule 4(d)(2), which applies only after a proper Rule 4(d)(1) waiver request, and that the § 415.30 notice Plaintiff sent pursuant to state law was not

such a request. Consistent with the Opposition's lack of legal citations writ large, it does not cite Rule 4(d) at all, does not argue that the California acknowledgment qualifies as a Rule 4(d)(1) waiver request, does not address the fact that federal waiver procedure requires the prescribed federal forms and at least 30 days to return the waiver whereas the state law method only gives a recipient 20 days, and does not address Baller Busters' additional argument that Mohamed was not an officer or authorized agent to whom an entity waiver request could properly be directed.

Defendants are correct that to recover costs, Plaintiff's request for a waiver of service must have complied with the procedures set forth in Rule 4(d)(1). Only "[o]nce a plaintiff has sent a valid request for a waiver of service of process [does] the burden shift[] to the defendant to avoid imposing unnecessary costs on the plaintiff." See Rollin v. Cook, 466 Fed. Appx. 665, 667 (9th Cir. 2012); see also Gaby's Bags, LLC v. Mercari, Inc., No. C 20-00734 WHA, 2020 WL 7664455, at *3 (N.D. Cal. Dec. 25, 2020) ("In order for [a party's] costs and fees to be recoverable under Rule 4(d)(2), [the requesting party] must first show that it made proper requests for waiver of service, meeting the condition precedents in Rule 4(d)(1)."). As courts in this circuit have recognized, "the sanction of costs and attorney's fees is a substantial one and strict compliance with the requirements must be met in order to recover costs and attorney's fees." Cooney v. City of San Diego, 2023 WL 12107912, at *3 (N.D. Cal. Jan. 4, 2023) (quoting Gaby's Bags, 2020 WL 7664455, at *4); Thongnoppakun v. American Exp. Bank, No. 2:11–cv–08063–ODW (MANx), 2012 WL 1044076, at *2 (C.D. Cal. Mar. 26, 2012) (requiring "strict compliance with Rule 4(d)"). Plaintiff carries the burden to demonstrate that a request for waiver of service was proper when put into issue. Procopio v. Condrad Prebys Trust, No. 14cv1651 AJB (KSC), 2015 WL 4662407 (S.D. Cal. Aug 6, 2015). Plaintiff has failed to do so in the instant case.

Plaintiff's attempt to argue that he met Rule 4(d)(1)'s mandate by complying with California law's allowances for service by mail ignores that "[t]hese requirements for service by mail under California law are similar, but not coextensive with the requirements for waiver under Federal Rule of Civil Procedure 4(d)." Cooney, 2023 WL 12107912, at *4; see also Thongnoppakun, 2012 WL 1044076, at *2 (recognizing that, while California Code of Civil Procedure section 415.30 is substantially similar to waiver of service under Rule 4(d), waiver of service under Federal Rule 4(d) has "specific additional requirements."); Tart Optical Enterprises, LLC v. Yaho Hsuan Wang, No. CV

16-8628 PA (SKx), 2017 WL 82296926, at *1 (C.D. Cal. Mar. 31, 2017) ("Federal Rule of Civil Procedure 4(d) includes procedures for obtaining a waiver of service. California has its own provisions for obtaining a waiver of service."). For instance, under Rule 4(d) a plaintiff must send both a notice and request and two copies of the waiver form appended to Rule 4, which is different than the acknowledgement form under California law. Morever, California Code of Civil Procedure § 415.30 requires a response within 20 days of the date of the mailing, whereas Rule 4(d)(1) allots a defendant a reasonable time of at least 30 days after the request was sent to return the waiver. Thus, Plaintiff has different burdens with respect to each method for obtaining costs, and Plaintiff shown—or so much as made any attempt to argue in his Oppostion—that he has met the requisite burden under Federal Rule 4(d)(1).

Accordingly, the Court **GRANTS** both Defendants' requests to vacate the Costs Order as to each of the Defendants.

## IV. Conclusion

For the foregoing reasons, the Court **GRANTS** both the motions to dismiss filed by Defendants Baller Busters and Mohamed. Further, the Court **VACATES** the Order Regarding Plaintiff's Motion for Costs issued June 11, 2026.

The parties appeared for oral argument on September 21, 2026. This Order reflects the Court's final decision on the instant motions.

**IT IS SO ORDERED.**